UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CRISTINA MENDOZA, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>JAY INSLEE, *et al.*,<br><br>　　　　　　　　Defendants. | CASE NO. 3:19-cv-06216-BHS<br><br>ORDER STRIKING PROPOSED COMPLAINT AND RENOTING *IN FORMA PAUPERIS* APPLICATION |

Plaintiff's application to proceed *in forma pauperis* ("IFP") has been referred to the undersigned pursuant to Amended General Order 02-19. The matter is before the Court on plaintiff's amended proposed complaint in support of her IFP application. *See* Dkt. 3.

Plaintiff, proceeding *pro se*, seeks to bring claims on behalf of herself, her deceased husband, and their three children against various state officials and employees and private individuals in this civil rights matter. Plaintiff alleges that the portion of the worker's compensation system that is self-administered by employers disadvantages Hispanic workers.

She contends that as a result of this discriminatory system, a worker's compensation claim filed by her husband, who was Hispanic, was denied, leading to his untimely death.

Because plaintiff seeks to proceed IFP, her complaint is subject to *sua sponte* dismissal if it fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2). Plaintiff's amended proposed complaint fails to state a viable claim under the civil rights statutes that she cites, which require plausible allegations of intentional discrimination. Her complaint does not plausibly allege intentional discrimination by any particular defendant, fails to explain how most defendants participated in the alleged events at issue, relies upon criminal statutes that do not provide for private causes of action, and, for her § 1986 claims, is barred by the statute of limitations.

Because plaintiff is *pro se*, the Court will offer her another opportunity to amend the proposed complaint. Therefore, plaintiff's amended proposed complaint (Dkt. 3) is dismissed without prejudice, her IFP application will be re-noted for **April 14, 2020**, and she must provide this Court with a second amended proposed complaint if she wishes to proceed with this matter.

## BACKGROUND

### I. Original Proposed Complaint

In December 2019, plaintiff initiated this matter under 42 U.S.C. § 1983. *See* Dkt. 1. Plaintiff requested to proceed IFP, and the undersigned reviewed plaintiff's proposed complaint as authorized by 28 U.S.C. § 1915(e)(2). *See* Dkt. 2. Finding that plaintiff had not stated a plausible claim of entitlement to relief, the Court dismissed plaintiff's proposed complaint without prejudice, re-noted her IFP application for February 14, 2020, and ordered her to provide an amended proposed complaint if she wished to proceed with this matter. *See* Dkt. 2, at 1–2.

**II. Amended Proposed Complaint**

Plaintiff has timely filed an amended proposed complaint with the Court. *See* Dkt. 3. She brings suit against the Governor of Washington State (Jay Inslee), the Washington State Attorney General (Bob Ferguson), the Director of Washington State's Department of Labor and Industries ("L&I") (Joel Sacks), L&I's medical director (Gary Franklin), and thirteen others—L&I staff, various medical providers, and a private attorney. *See* Dkt. 3, at 6. Her claims are under 42 U.S.C. §§ 1981, 1983, 1985, and 1986; 18 U.S.C. §§ 241, 242, and 245; and 42 U.S.C. 2000d, and for "outrageous government action." Dkt. 3, at 14–15. Plaintiff requests damages, judicial oversight of defendants (including oversight of L&I), and a change to worker's compensation law. *See* Dkt. 3, at 10.

Plaintiff alleges that defendants engaged in unconstitutional racial discrimination that caused her husband's death. *See* Dkt. 3, at 2. The crux of her claim relates to Washington State's Industrial Insurance Act, which provides for worker's compensation for injured workers and their families. *See* Dkt. 3, at 6. She alleges that a portion of the worker's compensation system that allows for employers to participate in self-administered worker's compensation program effectively discriminates against Hispanic workers. *See* Dkt. 3, at 7. She alleges that under this privately managed worker's compensation program "employers and businesses form and run their own worker[']s compensation programs[,] which are constitutionally unequal and relatedly discriminatory in how they treat their assigned injured workers compared to those" in the State-administered worker's compensation program. Dkt. 3, at 8.

According to plaintiff, employers in the self-administered program "contract with private claim management companies who hire or contract with private nurse consultants" who act with the goal of denying claims and minimizing compensation. Dkt. 3, at 8. Plaintiff alleges that

within this system, "there is an element of racial and ethnic discrimination" since "a great majority of self-insured programs are associated with huge agri-business entities whose workforces are significantly Hispanic and more often than not Spanish-speaking only, and of recent immigration, as well as with limited or no education and of indigent status." Dkt. 3, at 10. "These demographics make the Hispanic injured worker population much more vulnerable to worker[']s compensation denial of due consideration for services and benefits under the [self-administered] program[.]" Dkt. 3, at 10.

Plaintiff alleges that her husband was one such worker subjected to racial discrimination by defendants when he applied for worker's compensation and that after his claim was denied, he could not afford to protest his denial, resulting in his wrongful death from illness caused by an on-the-job injury. *See* Dkt. 3, at 9–10. Plaintiff alleges that medical care "would have prevented his injury-related medical condition from progressing beyond an initial point of still-functional level of physical capacity and employability to" his ultimate death. *See* Dkt. 3, at 11.

Plaintiff only briefly summarizes the alleged events. *See* Dkt. 3, at 12–13. She states that her husband's "work injury-related medical condition . . . manifested" on May 1, 2014. Dkt. 3, at 12. At some point, his worker's compensation claim was denied. *See* Dkt. 3, at 12. A doctor completed a medical evaluation report to have his case re-opened for treatment in September, 2016. Dkt. 3, at 12. However, re-opening was denied by the L&I medical director's office, and plaintiff's husband passed away in December 2016. Dkt. 3, at 12.

Plaintiff attaches to her complaint the 2016 doctor's report, which the Court will consider in determining whether the complaint plausibly states a claim entitling her to relief. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). As documented in the report, on May 1, 2014 while lifting heavy rolls of wire at work, plaintiff

injured his back. Dkt. 3, at 18. After his symptoms worsened, he visited a chiropractor, who opened his L&I claim. Dkt. 3, at 18.

The report summarizes plaintiff's medical records from 2014 to 2016, a period during which plaintiff's back condition allegedly worsened to the point that by September 2016, he was quadriplegic. Dkt. 3, at 18. Shortly after plaintiff's initial injury, he developed severe symptoms, including leg numbness. Dkt. 3, at 19. Plaintiff was treated by a variety of providers over the next two years, including defendants John Zambito (an emergency room doctor), Linda Seamen (a provider at an occupational medicine clinic), and Hoan Phan Tran (a neurologist). *See* Dkt. 3, at 19–22. These providers attributed plaintiff's symptoms to a "syrinx" (a spinal abnormality) and/or a "spinal myelitis" and were unable to resolve plaintiff's symptoms. Dkt. 3, at 20–22. Dr. Sloop, a neurologist, also opined that there was no causal relationship between plaintiff's paralysis and his workplace injury and recommended denying plaintiff's claim. *See* Dkt. 3, at 22.

The doctor writing the 2016 report opined that the level of deterioration in plaintiff's condition was "disturbing" and recommended re-opening plaintiff's claim. Dkt 3, at 29. He disagreed with plaintiff's medical providers and opined that his workplace injury had caused the syrinx, which had, in turn, produced plaintiff's symptoms. Dkt. 3, at 25.

**DISCUSSION**

**I. Legal Standards**

Where, as here, a plaintiff seeks to proceed IFP, the Court has authority to *sua sponte* dismiss her complaint if it "fails to state a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint "must contain a 'short and plain statement of the claim

showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

To state a claim on which relief may be granted, plaintiff must go beyond an "unadorned, the-defendant-harmed-me accusation[s]," "labels and conclusions," and "naked assertions devoid of further factual enhancement." *Id.* at 678 (internal quotation marks and citations omitted). Although the Court liberally interprets a *pro se* complaint, even a liberal interpretation will not supply essential elements of a claim that plaintiff has not pleaded. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). In addition to setting forth the legal framework of a claim, there must be sufficient factual allegations undergirding that framework "to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**II. Lack of Allegations against Nine Defendants**

As a preliminary matter, the Court notes that plaintiff's complaint, including the attached report, lacks allegations of how nine defendants acted—defendants Braid, Partlow, Graham, Cuevas-Ramirez, Campbell, Duke, Bennett, Wetsch-Betts, and Delatorre. *See* Dkt. 3, at 6. Although the complaint concludes that "all defendants" are liable (Dkt. 3, *passim*), such conclusions are inadequate. *See Iqbal*, 556 U.S. at 678.

Plaintiff must go beyond concluding that these defendants "are employed or associated agents of L&I, [the Attorney General's office], or other noted entities, and have acted violatively against the p[l]aintiff, as indicated in his causes of action . . . directly or collectively, by aiding and abetting or otherwise. . . ." Dkt. 3, at 5. Without factual allegations of *how* these defendants acted and how their actions establish the elements of plaintiff's various legal claims, her claims against these defendants are not viable.

### III. § 1986 and Criminal Code

#### A. 42 U.S.C. § 1986 Claims

Plaintiff seeks to bring claims under 42 U.S.C. § 1986 against all defendants. *See* Dkt. 3, at 14–15. The statute of limitations for such an action is one-year. *See* 42 U.S.C. § 1986. Plaintiff seeks relief for the allegedly wrongful death of her husband, which occurred in December 2016—more than a year before plaintiff initiated this matter. *See* Dkt, 3, at 12.

Plaintiff alleges that the actions are ongoing, "affecting the plaintiff in a continuous racially discriminative and unequal manner." Dkt. 3, at 15. However, her claim accrued when she knew or had "reason to know of the injury which is the basis of the action." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998). Plaintiff alleges no facts to support that she did not know of the actions forming the basis for her § 1986 claim by, at latest, December 2016. Therefore, the statute of limitations bars this claim.

#### B. 18 U.S.C. §§ 241, 242, 245

Plaintiff brings claims against all defendants for allegedly violations certain portions of the U.S. criminal code, 18 U.S.C. §§ 241, 242, and 245. *See* Dkt. 3, at 14–15. However, none of these statutes provide a private cause of action. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Miller v. Mariott Int'l, LLC*, 378 F. Supp. 3d 1 (D.D.C. 2019). Therefore, plaintiff cannot bring a civil suit on the basis of these statutes, and she fails to state a claim upon which relief can be granted under these statutes.

### IV. Remaining Claims

Plaintiff's remaining claims are her claims under 42 U.S.C. §§ 1981, 1983, 1985, and 2000d against defendants Inslee, Ferguson, Sacks, Franklin, Zambito, Seaman, Sloop, and Tran.

She also alleges a claim of "outrageous government conduct." Dkt. 3, at 15. Her claims are addressed in turn.

### A. 42 U.S.C. § 2000d (Title VII)

Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d *et seq.*, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to intentional discrimination under any program or activity receiving Federal financial assistance." This statute creates a private cause of action for claims of intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). The elements of such a claim are an allegation that the entity is engaging in discrimination on the basis of a prohibited ground and that the entity receives federal financial assistance. *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

Regarding whom a private plaintiff may sue under Title VI, district courts in this Circuit have uniformly ruled that defendants in their individual capacities are not subject to suit under Title VI. *See, e.g.*, *Corbin v. McCoy*, 3:16-cv-01659-JE, 2018 WL 5091620, at *7 (D. Or. Sept. 24, 2018) (cataloguing cases). This is because Title VI is directed toward programs that receive federal financial assistance, so that there is no private right of action against individual employees or agents of entities receiving federal funding. *Id.* A plaintiff may bring a claim against a defendant who receives federal financial assistance in that defendant's official capacity, however. *See Braunstein v. Ariz. Dep't of Trans.*, 683 F.3d 1177, 1189 (9th Cir. 2012) (noting that Congress has abrogated the Eleventh Amendment immunity of states for Title VI suits so that suits may be brought against officials in their official capacities).

1         Applying these principles to plaintiff's claims, her Title VI claim against all defendants is not colorable for several reasons. First, plaintiff fails to explain how any particular defendant's actions were motivated by racial discrimination. Although plaintiff's complaint is filled with conclusory allegations of discrimination, she does not plausibly allege facts to support that any particular defendant purposely discriminated against her husband. *See, e.g.*, Dkt. 3, at 2 ("defendants knowingly and deliberately engaged in illegally deceptive, fraudulent, conspirational [sic], and retaliatory practices in their discriminative adverse actions against the plaintiffs by not providing needed and vital life-saving medical care for their husband and father. . . ."). Although she lists allegations against defendants Inslee, Sacks, and Ferguson, individually, her allegations are that these defendants are responsible for other defendants' actions generally, and not that they intended to discriminate against plaintiff's husband on the basis of race. *See* Dkt. 3, at 3–4. Her allegations that defendants Ferguson and Sacks knew of and ignored the events at issue are inadequate (*see* Dkt. 3, at 5); again, plaintiff must plead facts plausibly alleging that these defendants were motivated by discriminatory animus.

        Nor does plaintiff allege facts to support that individual medical providers—defendants Zambito, Tran, Sloops, and Seaman—were motivated by discriminatory animus. Rather, she appears to rest her claim on her allegations that unnamed "agents" discriminated against Hispanic claimants and that as a whole, the self-administered worker's compensation system disparately impacts Hispanic persons. *See* Dkt. 3, at 9–10. Plaintiff should be aware that "disparate impact" alone is generally not sufficient to make out a Title VI claim. *See Alexander*, 532 U.S. 275 (holding that Title VI outlaws only intentional discrimination and that there is no private right of action to enforce regulations enacted under Title VI that proscribe programs with a disparate impact); *compare with Committee Concerning Community Improvement v. City of*

1 | *Modesto*, 583 F.3d 690, 702 (9th Cir. 2009) (explaining the rare circumstances in which

2 | disparate impact *can* amount to a showing of intentional discrimination, based on starkly

3 | disparate impact).

4 | Plaintiff's claims under Title VI separately fail because plaintiff does not allege that any

5 | particular defendant receives federal financial assistance—an essential element of a Title VI

6 | claim. *See Fobbs*, 29 F.3d at 1447 (9th Cir. 1994).

7 | Finally plaintiff disavows that she is bringing claims against defendants in their official

8 | capacities. *See* Dkt. 3, at 5. As noted above, however, plaintiff's Title VI claims are colorable

9 | only if she brings them against defendants in their official capacities.

10 | For these three reasons, plaintiff fails to state a claim under Title VI.

## B. 42 U.S.C. § 1981

12 | 42 U.S.C. § 1981 forbids discrimination in the making or enforcement of employment

13 | contracts. A claim under 42 U.S.C. § 1981 has three elements—

> (1) [plaintiff] is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race . . . ; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.).

*Peterson v. State of California Dep't of Corr. & Rehab.*, 451 F. Supp. 2d 1092, 1101 (E.D. Cal. 2006) (citing *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). Like Title VI, § 1981 requires a plaintiff to allege intentional or purposeful discrimination. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Unlike Title VI, a claim against a state government official in his or her official capacity for damages under § 1981 is barred by sovereign immunity. *See Pittman v. Oregon*, 509 F.3d 1065 (9th Cir. 2007). However, a claim

1 | for damages may be brought against an official in his or her individual capacity. *See, e.g.*,

2 | *Lelaind v. City & Cty. of S.F.*, 576 F. Supp. 2d 1079, 1089 (N.D. Cal. 2008).

3 | As noted above, plaintiff fails to plausibly allege that any particular defendant's actions were the result of intentional discrimination on the basis of race. Moreover, she does not identify an impaired contractual relationship under § 1981(b) that forms the basis for each of her claims. *See Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006). Finally, to the extent that she alleges that defendants such as defendants Inslee, Sacks, Franklin, and Ferguson—are liable on the basis of their supervisory roles, a § 1981 claim cannot be maintained on a theory of supervisory responsibility. *See Fed. of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996).

Her bare allegation that § 1981 was violated by defendants because they discriminated against plaintiff on the basis of his race is inadequate to state a claim. *See* Dkt. 3, at 14.

### C.  42 U.S.C. §§ 1983 and 1985

Plaintiff alleges violations of 42 U.S.C. §§ 1983 and 1985. *See* Dkt. 3, at 14. Section 1985(3) prohibits conspiracies to deprive a person or class of persons of the equal protection of the laws. A claim under 42 U.S.C. § 1983 requires a showing that a person acting under color of state law subjected a person to violation of his or her constitutional rights.

Similar to Title VI, the law is clear that a claim of discrimination under §§ 1983 and 1985 requires a showing of intentional discrimination. *See Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998); *Mollnow v. Carlton*, 716 F.2d 627, 628 (9th Cir. 1983). Plaintiff may bring claims against individual defendants in their personal capacities for damages, although she may not bring claims against governmental defendants in their official capacities for damages. *See, e.g.*, *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1407–08 (N.D. Cal. 1997).

ORDER STRIKING PROPOSED COMPLAINT AND
RENOTING IN FORMA PAUPERIS APPLICATION -
11

1    As noted above, plaintiff's factual allegations fail to establish that any particular
2    defendant acted with a purpose or intent to discriminate on the basis of race.  Plaintiff's bare
3    allegations that all defendants "intentionally racially discriminat[ed] and caus[ed] plaintiff[] to be
4    subjected to unequal deprivation and denial of exercising her protected civil rights" and "having
5    knowledge of wrongs committed or conspired to be done . . . and having power to prevent or aid
6    in preventing such, neglected or refused to do so" are inadequate.  *See* Dkt. 3, at 14, 15.
7    Moreover, the law is clear that individuals are not liable under civil rights statutes—including §§
8    1983 and 1985—merely because they are responsible for their subordinates' actions.  *See Iqbal*,
9    556 U.S. at 676; *see also Boreta v. Kirby*, 328 F. Supp. 670, 674 (N.D. Cal. 1971).  Plaintiff must
10   allege that each Government official defendant has, through that official's *own* actions, violated
11   the Constitution.  *See Iqbal*, 556 U.S. at 676.  Plaintiff fails to explain how other, presumably
12   non-official defendants, were acting under color of state law at the time of their involvement.
13   *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 49 (1988) (holding that a defendant has acted under color
14   of state law where he or she has "exercised power possessed by virtue of state law and made
15   possible only because the wrongdoer is clothed with the authority of state law" (Internal citation
16   omitted.)).

17   Plaintiff also alleges "outrageous government action," which the Court interprets as a
18   claim of violation of substantive due process under § 1983.  However, a freestanding substantive
19   due process claim does not lie where there is a constitutional amendment that provides an
20   "explicit textual source of constitutional protection against a particular sort of government
21   behavior."  *City. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotation omitted).
22   Because plaintiff does not explain how any substantive due process claim would be different

ORDER STRIKING PROPOSED COMPLAINT AND
RENOTING IN FORMA PAUPERIS APPLICATION -
12

from her claim of racial discrimination, her claim is co-extensive with her equal protection claim and therefore not independently viable.

Plaintiff's claims under §§ 1983 and 1985 fail for lack of plausible allegations of how each defendant purposefully discriminated on the basis of race.

## CONCLUSION AND DIRECTIONS TO PLAINTIFF AND CLERK'S OFFICE

Plaintiff's amended proposed complaint submitted in support of her IFP application (*see* Dkt. 3) is dismissed with leave to amend. On or before **April 14, 2020**, plaintiff must file a second amended proposed complaint with the Court that states a cognizable claim. Plaintiff should note that her amended proposed complaint will be a complete substitute for her prior proposed complaints and should not incorporate any portion of her prior proposed complaints by reference. Plaintiff should amend her complaint to contain a short, plain statement of her claim against each defendant and how that individual defendant's actions make him or her liable.

If plaintiff fails to comply with this Order on or before April 14, 2020, the undersigned will recommend that plaintiff's IFP application be denied and that this matter be dismissed without prejudice. The undersigned will not grant plaintiff's IFP application unless she has submitted an adequate proposed complaint. Plaintiff must submit an adequate amended complaint and must either obtain the Court's permission to proceed IFP or pay the filing fee if she wishes to proceed with this matter.

///

///

///

ORDER STRIKING PROPOSED COMPLAINT AND
RENOTING IN FORMA PAUPERIS APPLICATION -
13

1     The Clerk's Office shall update the docket to re-note plaintiff's IFP application (Dkt. 1) for April 14, 2020 and to reflect that plaintiff's proposed complaint (Dkt. 3) is dismissed with leave to amend and that her second amended proposed complaint is due no later than April 14, 2020.

    Dated this 17th day of March, 2020.

*[signature]*

J. Richard Creatura
United States Magistrate Judge